**Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. 2255**

Movant, Troy Allen Lucas, also referred to herein as Petitioner, offers the following Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. 2255 and provides as follows:

## I.   STATEMENT OF CASE

In 2008, Baltimore City Police wrongfully pinned the murder of Rob Long on Demetrius Smith. And a local jury convicted him based on the testimony of two witnesses. He served four years of a life sentence before federal investigators uncovered evidence that led to his release. That federal investigation revealed that Long's demise resulted from a remarkable scheme to stop Long's cooperation in an investigation of Jose Morales for theft. Just days after learning from his lawyer that Long was cooperating in the theft investigation, Morales hired Troy Lucas to kill Long.

Federal authorities convicted Morales of murder in 2013, and with Morales' cooperation, federal efforts turned to Troy Allen Lucas. Lucas was then convicted by a federal jury for his involvement in the murder-for-hire plot. During his trial, Lucas sought to introduce the transcript of Bartlett's testimony from Smith's trial. In the trial that led to Smith's wrongful conviction, Bartlett had testified that he saw Smith shoot Long. The district court refused to admit Bartlett's testimony under the residual exception to the rule against hearsay, Rule 804. Also, the outcome on the predicate offense charged in Count 2—the substantive crime of using interstate commerce

1

facilities in the commission of murder-for-hire—is dictated by the same analysis. As a result, it was held that either of Lucas' § 1958(a) convictions properly qualified as predicate crimes of violence to sustain Lucas' § 924(c) conviction. Petitioner Lucas was convicted of Conspiring to Commit Murder-for-Hire Resulting in Death, using a Firearm During a Crime of Violence Resulting in Death. Lucas challenges this ruling.

The movant, Troy Lucas, also referred to a Petitioner, filed a notice of appeal, and an appeal and was Argued on May 18, 2020, and Decided on December 4, 2020. Now Petitioner Lucas files a timely motion to vacate the judgment of the court and seek a new trial under 28 U.S.C. 2255.

## II.    RELEVANT FACTUAL BACKGROUND

On a March 2008 morning, Rob Long was shot twice in the head near Traci Atkins Park in Baltimore, Maryland. He died from gunshots that came from no "more than two feet away." Although Long was seen alone with Lucas fifteen minutes before the murder, the authorities charged Smith for Long's murder. In 2010, a jury in Baltimore City convicted Smith based largely on the testimony of two alleged eyewitnesses:   Michelle Vicker and Mark Bartlett. Bartlett, now deceased, testified that he saw Smith shoot Long while standing at the corner across from the park. Bartlett claimed that around 7:30 am he saw Smith "reach[] in his jacket and pull[] out a handgun and aim[] it at Mr. Long's head." While video evidence from a pole camera at the scene contradicted Bartlett's testimony that he saw the murder, Smith's counsel failed to address this evidence on Bartlett's cross-examination. Instead, Smith's counsel agreed to a stipulation that the video's stated time was inaccurate. Smith was convicted and sentenced to life in prison.

Five months after Long's murder, law enforcement caught Morales in Texas with

2

Six kilograms of cocaine, which led a federal jury to convict him of drug trafficking.   Once incarcerated on those charges, Morales provided information to prison officials about Long's murder.  This information led to a federal investigation that revealed that Morales and Lucas— not Smith—had murdered Long. Long, it turns out, had agreed to cooperate with law enforcement just before he was murdered.   He cooperated against his longtime employer, Morales,  in a  state theft case.  Using the information  Long provided,  law enforcement obtained a  search warrant for Morales'  home,  where they located stolen goods.  Morales then contacted his attorney, Stanley Needleman, "irritated" and "very upset" about the search warrant.

In that discussion,  Morales speculated that  Long must have been the informant. Morales demanded that Needleman find out if Long was cooperating with law enforcement. Based on the Assistant State's Attorney's refusal to provide any information about the informant, Needleman began to suspect that Long was the informant. He confirmed that suspicion through Long's attorney, Alex Leikus, who gave away his client. Needleman relayed this information to Morales, who became "enraged."  Long was murdered two days later.
Based on the federal investigation, Morales was convicted and sentenced to life in prison for Long's murder. See United States v. Morales, 585 F. App'x 176 (4th Cir. 2014). And state prosecutors requested that Smith's conviction —which was still on appeal— be vacated. Smith's conviction was finally expunged in March 2016, six years after he had been wrongfully convicted. That left  Lucas,  whom Morales had hired to kill  Long.

In 2018,  a  federal jury convicted Lucas based on Morales' testimony and corroboration from witnesses, a street-security camera, phone records, and statements Lucas had made to law enforcement. Lucas was convicted on all three counts charged in the indictment: conspiring to commit murder-for-hire resulting in death,  using an interstate-commerce facility in the

commission of murder-for-hire conspiracy resulting in death, and using a firearm during a crime of violence resulting in death. The district court sentenced Lucas to life in prison.

Lucas appealed the exclusion of testimony from a deceased witness and the conclusion that murder-for-hire is a crime of violence under the force clause of 18 U.S.C. § 924(c).

In fact, 18 U.S.C. §§ 922, 924, Firearms N.B.: For cases addressing the Armed Career Criminal Act, see Sentencing Statutes in Part VIII. United States v. Simms, 914 F.3d 229 (4th Cir. Jan. 24, 2019) (en banc) (Motz, J.) (E.D.N.C.) (holding that "residual clause" of 18 U.S.C. § 924(c)'s definition of "crime of violence" is void for vagueness, and therefore unconstitutional, for same reasons that Supreme Court found a residual clause in 18 U.S.C. § 924(e)'s definition of "violent felony" and in 18 U.S.C. § 16's definition of "crime of violence" to be unconstitutional). Herein are the stated facts from Petitioner Lucas in which he challenges the Government's theory that led to the death of Robert Long. Under these relevant facts, Petitioner Lucas offers the following facts:

> **(A)** *Petitioner Troy Lucas was provided with ineffective assistance of counsel under Constitutional standards when Attorney Harry Trainer and Attorney Chris Davis did not call as a witness, Louis Vanever, who would have testified that he worked for cooperating witness Jose Morales. Vanever would have further testified that Morales provided Vanever with a cell phone, which Vanever used to stay in contact with Morales to manage Morales' business. At Petitioner's trial, the Government introduced cell phone records to prove that there was contact between both Morales' phone and Vanever's phone, especially around the time of the murder of Robert Long. The Government Attorney wrongly attributed the ownership of Vanever's phone to Petitioner. Had Attorneys Trainer and Davis called Vanever to testify at the trial, Vanever would have verified that the cell phone used by him, which is the cell phone in question, was given to him by Morales for business purposes. Vanever's testimony also would have established that the Government's theory, that the relevant phone calls were placed by Vanever and not by Petitioner, proving the Government's theory to be 100% wrong.*

**(B)** During the trial Petitioner Troy Lucas was provided with ineffective assistance under Constitutional standards by Attorney Harry Trainer and Chris Davis who did not move to introduce the prior State Trial testimony of Mark Bartlett. The Federal Judge ruled that Bartlett's state testimony could only be admissible under Rule 804 (b)(1) during a colloquy with Defense Counsel and the Government Attorney.

Notwithstanding this judicial directive, neither Attorney Trainer nor Davis filed a motion or made an oral application seeking to introduce Bartlett's exculpatory testimony, which was sworn testimony provided at a State Trial. Had Attorney Trainer or Davis moved to introduce Bartlett's State Trial testimony, of his eyewitness account of his personal observations of Robert Long's murder, perpetrated by Demetrius Smith, there is a strong probability that the result of the proceedings would have been different, thereby, resulting in the acquittal of Petitioner Lucas.

**(a)** In a case with facts similar to this, it was held that statements made by a witness who died before trial would be admissible under Rule 804(d)(2)(A), (B), and (E). Regarding the applicability of the Confrontation Clause, the court relied on the criteria outlined in United States v. Scholle, 553 F.2d 1109 (8th Cir. 1977), cert. denied, 434 U.S. 940, 98 S. Ct. 432, 54 L.Ed.2d 300:

A highly relevant consideration is the degree of prejudice imposed upon the fact-finding process by the declarant's non-availability. We should consider whether the out-of-court statement bears traditional indicia of reliability, whether it was crucial to the government's case, whether the jury had an opportunity to weigh the credibility of the extrajudicial statement, and whether appropriate instructions were given by the trial judge. 553 F.2d at 1119 (Citations omitted).

**(C)** Petitioner Troy Lucas was provided with ineffective assistance of counsel. under Constitutional standards, by Attorneys Harry Trainer and Chris Davis, who failed to challenge the statements made by Petitioner, who was not Mirandized before or during the custodial interrogation, which was conducted by law-enforcement. Moreover, AUSA Wilkinson admitted that law-enforcement did not issue Miranda Rights, before or after their interrogational interview of Petitioner. Had Attorneys Trainer and Davis filed a motion challenging the custodial interrogation of Petitioner, which was void of Miranda warnings, the prejudicial and inculpatory statements of Petitioner would have been suppressed. More importantly, said statements would have been excluded from Petitioner's trial.

**(D)** Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards, by Attorneys Harry Trainer and Chris

*Davis, who did not inform Petitioner of a plea offer, which was extended by the Government. Petitioner Troy Lucas learned of the plea offer after the trial had concluded. Had counsel informed Petitioner of the plea offer in a timely fashion Petitioner may have accepted the offer, or at least would have engaged in further plea negotiations. Nevertheless, Attorneys Trainer and Davis' failure to communicate the plea offer, to Petitioner, constitutes ineffective assistance of counsel. The Government extended a plea offer of forty (40) years and the promise that Petitioner would be incarcerated at a facility close to Petitioner's family. This statement is based on post-trial conversation that Petitioner had with Defense Counsel.*

*(E)   Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards, by Attorneys Harry Trainer and Chris Davis, who did not move for a mistrial upon learning that members of the victim's family were communicating with members of the Trial Jury, during a break prior to the conclusion of the trial. The family members claimed to be obtaining directions for traveling to and from the Courthouse. However, this explanation is absurd because at the time of the family member's interaction with the Jury the Trial had been underway for a matter of days. The victim's family had no apparent problem finding the Courthouse, as they were present every day for an of the trial proceedings prior to the date in which they were discovered having interactions with the Trial Jury. Attorneys Trainer and Davis should have insisted on a thorough voire dire of the victim's family members, as well as all of the members of the Jury. Without a thorough inquiry, by the Court, there is no way to know whether the victim's family had discussed, with the Jurors, matters that affected the juror's ability to remain unbiased and impartial and to decide the case solely on the evidence, or lack thereof, which was presented at the Trial. As a result, Attorneys Trainer and Davis functioned below the Constitutional standard of providing Petitioner with adequate representation, at the Trial, therefore, failing to safeguard the integrity of the truth-seeking process, by an unbiased and impartial Jury.*

*(F) Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards. when Attorneys Harry Trainer and Chris Davis failed to preclude the testimony of Morales' Private Investigator. The Private Investigator, accompanied by Morales' two Attorneys, visited Petitioner at the State Detention Facility. Petitioner was represented by Attorney Donald Wright, on an unrelated state charge, at the time in question. Morales· Attorneys and Private Investigator broke an*

6

*ethical rule, not to interview a defendant that is represented by an attorney without initially obtaining the permission of the defense attorney.  In addition, Morales' Defense Team and Investigator were an active arm of the Prosecution Team and any information acquired during the interview should have been suppressed, by the  Court, for the blatant omission of Miranda rights, in the absence of Petitioner's Attorney Donald Wright. Since Morales' Attorneys and investigators conducted a custodial interrogation of Petitioner, without his attorney present, with the intent to use whatever inculpatory statement elicited from Petitioner against him at trial. The witness should never have been allowed to regurgitate any statements made by Petitioner at Petitioner's future Federal Trial.*

*The law is crystal clear on this matter of inadmissibility. A suspect must be informed of his or her rights when he or she is subject to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 477-78, 482: see also United States v. Hashime, 734 F.3d 278,282 (4th Cir. 2013). "The failure to give the prescribed warning and obtain a waiver of rights before custodial questioning generally required exclusion of any statements obtained." See United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005).*

*(G) Attorneys Trainer and Davis provided Petitioner with ineffective assistance of counsel when they did not challenge the Government's intrusion into the attorney-client confidentiality, and to elicit statements against the interest of his client in the absence of Miranda warnings, which were obtained in the absence of counsel.  Attorney Harry Trainer and Chris Davis should have moved to preclude the Private Investigator's trial testimony, which recited inculpatory statements, made by Petitioner, which were obtained during the custodial interrogation.  The "in custody" requirement for Miranda protection was satisfied since Petitioner was in custody, even if on an unrelated offense, and even more noteworthy is the fact that Petitioner was represented by an attorney at the time of the custodial interrogation. Finally, the Private Investigator was acting in a law enforcement capacity and Morales' Attorney had every intention of (1) using the elicited information at Morales' Trial and (2) using it for a plea deal to extricate their client from a life or death sentence. In the end, the Government used the interrogative statements at Petitioners Trial, by calling Morales' Private Investigator as a  witness to parrot what Petitioner stated at the Detention Center.*

*(H) Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards, when Attorneys Harry Trainer and Chris Davis failed to  have an expert examine Robert Long's cell phone. which could have contained  inculpatory evidence against Morales, as well as other individuals.  In addition, the cell phone data*

*could have supported Petitioners theory that Petitioner is innocent of the murder of Robert Long and could have included data that pointed to the actual murderer, as well as the murderer's motives. Finally, the cell phone data could have provided a lead to other witnesses, who could have supplied crucial information regarding the last moments of Long's life, as well as information relevant to Long's murder. Attorneys Trainer and Davis should have moved the Court for an Order, authorizing a Defense expert's examination of Long's cell-phone data. Defense counsel's failure to do so constitutes ineffective assistance of counsel.*

*(I) Petitioner Troy Lucas was provided with ineffective assistance of counsel, by Attorneys Trainer and Davis. who did not challenge the interstate-commerce element prior to, during or after the Trial?  Attorneys Trainer and Davis failed to move for an acquittal, after Trial, pursuant to a Rule 29 Motion. In such a Motion, Attorneys Trainer and Davis could have argued that there was no evidence sufficient to sustain the conviction, of the murder-for-hire offense charged in the Indictment, as Jose Morales testified that he and Petitioner did not communicate by phone. Without the telephonic communications, the interstate-commerce element is lacking evidentiary-wise and, therefore, there is no link to federalize the murder of Robert Long.  Attorneys Trainer and Davis' failure to file a Rule 29 Motion based on the lack of evidence to support the offense and conviction, amounts to ineffective assistance of counsel.*

*(J) Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards when Attorneys Harry Trainer and Chris Davis did not call crucial law enforcement officers to testify at the Trial. The Baltimore police officers were the first responders to the radio run, of the shooting of Robert Long. These officers spoke to witnesses, collected evidence at the crime scene and arrested Demetius Smith, a dark-skinned black male, for the murder of Robert Long. In a State Trial, Smith was convicted for the murder of Long, and served approximately four years of a life sentence, before his conviction was overturned, based on new evidence that suggested his innocence. The impetus for Smith's release was the statement of Jose Morales, who told federal authorities that he hired Petitioner and brother Lucas to murder Robert Long. When Attorneys Trainer and Davis failed to call these crucial witnesses, to testify at the trial, their representation of Petitioner fell below the acceptable function. of competent counsel, violating Petitioner's Sixth Amendment Right to effective assistance of counsel.*

> **(K)** *Petitioner Troy Lucas was provided with ineffective assistance of counsel, under Constitutional standards. when his Attorneys Harry Trainer and Chris Davis misled Petitioner by informing Petitioner that their trial strategy was to retry the Demetrius Smith case, pointing to Smith as the perpetrator of the Robert Long murder knowing full well they had no intention of using said trial strategy Attorney Trainer bragged, to Petitioner about how he (Mr. Trainer) had documentation. from the Smith trial, sitting on four conference tables and that he could easily convince the jury that there was reasonable doubt from which to conclude that Petitioner Lucas was innocent of the heinous crime.*
>
> **(L)** *Petitioner Troy Lucas was provided with ineffective assistance of counsel under Constitutional standards. Counsel's failure to investigate Petitioner's mental state and to present evidence.*

## III. ARGUMENT

### 1. Movant- Petitioner was denied the effective assistance of counsel.

As a defendant in a criminal prosecution, Mr. Lucas was entitled to "the guiding hand of counsel at every stage of the proceeding….." Powell v. Alabama, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64 (19132). The Sixth Amendment provides that [i]n all criminal prosecutions, the accused shall enjoy the right… to have the Assistance of Counsel for his defense." U.S. Const., amen. VI. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." United States v. Chronic, 466 U.S.648, 654, 104 S. Ct. 2039, 2044(1984).

Embodying " a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself"; Johnson v. Zerbst, 304 U.S. 458, 462 - 463, 58 S. Ct. 1019, 1022 (1938); the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding," Maine v. Moulton, 474 U.S. 159, 169, 106 S. Ct. 477, 483(9185). According, a "deprivation of a person's liberty may not be imposed unless the defendant was accorded the 'guiding hand of counsel' in the prosecution for the crime charged." Alabama v. Shelton, 535 U.S. 654, 658, 122 S. Ct. 1764, 1767(2002). That guiding hand must, of necessity, be an effective one, and where, as here, such

effective assistance is denied, the criminal defendant has been denied the fundamental rights guaranteed under the Constitution and the abridgment of which invalidates the imposition of a sentence which would effect a deprivation of the defendant's liberty.

The Sixth Amendment guarantees all criminal defendants the right to effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052, 2055(9184). To establish a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong Strickland test. First, a defendant must show that his counsel's performance was below the level expected of a reasonably competent attorney. Id. at 687.

Second, the defendant must establish prejudice, which is accomplished by showing "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Here the movant's motion is premised not only on ineffective assistance during the court proceeding themselves, but also from the genesis of the charges with the respect to the decision made early in the process which effectively determined the outcome. The Supreme Court has "found that the right attaches at earlier, 'critical stages in the criminal justice process where the results might well settle the accused's fate…." Maine v. Moulton, 474 U.S. 159, 170 106 S. Ct. 477, 484 (9185) (quoting United States v. Wade, 388 U.S. 218, 224, 87 S. Ct. 1926, 1930(1967)).

There can be no question that where the defendant is called upon to decide whether to accept a plea arrangement and to forgo other rights, even before a charge is formally made, such a situation constitutes a "critical stage" and the accused is entitled to the effective assistance of an attorney because the accused "'requires aid in coping' with the legal dilemma presented." Patterson v. Illinois, 487 U.S. 285, 298, 108 S. Ct. 2389, 23897 (1988) (quoting) United States v. Ash, 413 U.S. 300, 313, 93 S. Ct. 2568, 2575(1973)).

When alleging a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective

10

standard of reasonableness, resulting in prejudice. Strickland v. Washington, 466 U.S. at 687-91, 104 S. Ct. at 2064-2066. While in making this determination, there is a presumption that counsel's conduct was within the wide range of reasonable professional assistance, id. At 689; see Fields v. Attorney Gen'l of Md., 956F.2d 1290, 1297-99(4th Cir. 1992); where the representation is deficient and prejudices the defendant, relief must be granted to the movant-petitioner.

To demonstrate prejudice, Movant-Petitioner must show a probability that the alleged errors worked to her or his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S. Ct. 2639, 2648(1986). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2dat1297(citing Hutchins, 724 F. 2d at 1430).

In Rompilla v. Beard, 545 U.S. 374, 125 S. Ct 2456(2005), the Supreme Court held that a defense attorney did not satisfy the Sixth Amendment requirement of "effective assistance of counsel" when the defense attorney did not examine the prosecutor's file or otherwise make reasonable efforts to uncover the facts related to the aggravating circumstances that would be offered by the prosecutor. See also Florida v. Nixon, 543 U.S. 175, 125 S. Ct. 551 (2004)(holding that a defense attorney in a capital case did not enter "effective assistance of counsel" in violation of the Sixth Amendment by entering a guilty plea without the express consent of the defendant): Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527(2003)( holding that a defense attorney's failure to investigate possible mitigating circumstances constituted "ineffective assistance of counsel" in violation of the Sixth Amendment.)

In Rompilla, the Court reasoned that even where the "defendant and his family members have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable

efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence." Even "a client's expressed intention to plead guilty does not relieve counsel of their duty to investigate possible defenses and to advise the defendant so that he can make an informed decision." Savino v. Murray, 82 F. 3d 593, 599(4th Cir. 1996).

　　Then Mr. Lucas has set forth facts that entitle him to relief. When a habeas petitioner challenges a sentence on the grounds of the denial of the Sixth Amendment right to effective assistance of counsel, the two criteria must be satisfied. He maintains that he has satisfied them here.

### 2. Government's breach of disclosure obligation under Due Process

　　Due process requires that in a criminal prosecution, the government must disclose to the defendant evidence favorable to him if the suppression of that evidence would deny him a fair trial. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." Brady v. Maryland, 373 U.S. 83, 87 (1963).

　　The Court in Brady held that the prosecution's suppression of evidence that is favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. And evidence favorable to the defendant includes not only exculpatory evidence but also evidence that the defendant can use to impeach government witnesses. See Giglio v. United States, 405 U.S. 150, 153–54 (1972); United States v. Bagley, 473 U.S. 667, 676 (1985).

　　Just as the Brady rule does not depend on the good faith, vel non, of the prosecutor, it also is not limited to evidence known only to the prosecutor. Thus, the obligation applies to

"evidence known only to police investigators and not to the prosecutor." Kyles v. Whitley, 514 U.S. 419, 438 (1995).

Nonetheless, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Id. at 436–37. Rather, the suppressed evidence must be materially favorable to the accused — that is, the nondisclosure must be "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281 (1999). Stated otherwise, the question is whether "the favorable evidence," "considered collectively," "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435–36 (emphasis added).

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct.1194(1963), the Supreme Court held " the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the  evidence favorable to the accused upon request violates due process where the evidence is material either guilt or punishment, irrespective of the good faith or bad faith of the prosecutor." 373 U.S. at 87.

In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court extended this principle to include evidence that impeaches a witness's credibility. 405 U.S. at 154.

Such a violation exists even where there is purportedly a waiver of discovery. There are three elements of a Brady/Giglio violation:

(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

United States v. Williams, 547 F. 3d 1187, 1202(9th Cir. 2008) (quoting Stickler v. Greene, 527 U.S. 263, 281-82(1999) (internal quotation marks omitted)).

Evidence is prejudicial or material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682(1985). There is a "reasonable probability" of prejudice when suppression of evidence 'undermines confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434(1995) (citing Bagley, 473 U.S. at 678).  But a "reasonable probability" may be found" even where the remaining evidence would have been sufficient to convict the defendant." Jackson v. Brown, 513 F. 3d 1057, 1071(9th Cir. 2008) (citing Strickler, 527 U.S. at 290).

Accordingly, this failure to disclose Brady's information undermines the entire justice system. It warrants granting relief under Section 2255.

### 3. Deficient Performance During Initial Plea Negotiations

A defendant's Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012). To prevail on an ineffective assistance claim, the defendant must show that counsel's performance was constitutionally deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

 To show prejudice under Strickland where the ineffective assistance results in rejection of a plea offer and the defendant is convicted in the ensuing trial, a defendant must show that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court

would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Lafler, 566 U.S. at 164.

Courts have held that counsel's performance during plea bargaining stages can be constitutionally deficient for various reasons, such as basing advice to the defendant on incomplete research or recommending a defendant risk a great deal at trial in exchange for very little. See, e.g., Hoffman v. Arave, 455 F. 3d 926(9th Cir. 2006), cert. granted, 76 U.S.L.W. 3238(U.S. Nov. 5, 2007).

Indeed, the Supreme Court long ago stressed that a defendant "is entitled to rely upon his counsel… to offer his informed opinion as to what to plea should be entered, "Von Moltke v. Gillies, 332 U.S. 708, 721(1948), and courts of appeal have regularly found counsel's performance deficient when counsel fails to sufficiently explain and advise a client about "the substantial difference between the likely sentencing ranges upon conviction after trial and upon a guilty plea." Cullen v. United States, 194 F. 3d 401, 403-04 (2d Cir. 1999): see also United States v. Blaylock, 20 F. 3d 1458, 1468 (9th Cir. 1994) ( indicating that "an attorney's incompetent advice regarding a plea bargain [can fall] below reasonable standards of professional conduct"); Toro v. Fairman, 940 F. 2d 1065, 1067-68(7th Cir. 1991) (Finding that misguided advice during plea stage amounts to deficient performance); Turner v. Tennessee, 585 F. 2d 1201, 1205-06(6th Cir. 1988)(holding that bad plea advice amounted to ineffective assistance of counsel), vacated on other grounds, 492 U.S. 902(1989).

The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160(1970). In

applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, Brady v. United States, 397 U.S. 742, 749, 90 S. Ct. 1463(1970),. In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, Brady v. United States, 397 U.S. 742, 749 9 S. Ct. 1463(1970) granting the defendant solemn declaration of guilt a presumption of truthfulness. Henderson v. Morgan, 426 U.S. 637, 648, 96 S.Ct.

2253(1976) (plurality opinion).

The Constitution requires the circumstances to reflect that the defendant was informed of all of the direct consequences of his plea. Brady, 397 U.S. at 755, 90 S. Ct. at 146. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving or unintelligent if the defendant does not understand the charges against him. Henderson, 426 U.S. at 645 n. 13, 96 S. Ct. at 225 .13. Concerning counsel's performance, the record illustrates that the movant was denied the opportunity to even explore a plea agreement.

Turner v. Tennessee, 858 F. 2d1201, 1205-06 (6th Cir. 1988) (holding that bad plea advice violated defendant's right to effective assistance of counsel). The Tenth Circuit has also very recently indicated "that a failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel." United States  v. Klima, 2007 U.S. App. LEXIS 18503, No.07-03073, at *7 (10th Cir. Aug. 1, 2007) (quoting United States v. Broce, 488 U.S. 563, 574(1989)).

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Gideon v. Wainwright, 372 U.S. 335, 344 (1963). "Their presence is essential because they are the means through which the other rights of the person on trial are secured." Cronic, 466 U.S. at 653. "Of

all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." Id. at 654.

**4. Miranda Rights Protection**

Lucas presents the argument that his attorney's failure to move to suppress his confession under Edwards v. Arizona, 451 U.S. 477 (1981), which prohibits police interrogation after an invocation of Miranda rights, constituted ineffective assistance of counsel.

In Edwards v. Arizona, the Supreme Court held that once a suspect invokes his right to counsel under Miranda, he is "not subject to further interrogation" by the police, unless — in an exception not relevant here — the suspect himself initiates renewed communication with the police. 451 U.S. at 484–85. If the police do interrogate a suspect in custody after he asserts his right to counsel, then any statements they elicit are per se inadmissible, even if the suspect is again advised of his Miranda rights. Id. at 487.

To establish an Edwards violation, a petitioner must show both that he clearly and "unambiguously" invoked his right to counsel, Davis v. United States, 512 U.S. 452, 459 (1994); Edwards, 451 U.S. at 485 (police may not interrogate a suspect who has "clearly asserted" his Miranda right to counsel), and also that the police subsequently "interrogated" him, Edwards, 451 U.S. at 484 (prohibiting "further police-initiated custodial interrogation" after invocation); see Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980) ("Miranda safeguards come into play" when police engage in "interrogation" of a suspect in custody).

**IV.. STANDARD OF REVIEW**

This Court is asked to recognize that the Petitioner is pro se and has accorded his pleadings liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside, or correct his sentence on four

grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was more than the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. Hill v. United States, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016) (quoting United States v. Frady, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars the presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010); see Dretke v. Haley, 541 U.S. 386, 393 (2004); Reed v. Farley, 512 U.S. 339 (1994); see also United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999).

Conversely, any "failure to raise an ineffective assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S. 500, 509 (2003).

**V. DISCUSSION**

United States District Judge Roger W. Titus sentenced Troy Allen Lucas a/k/a "Troy Madron," age 49, of Baltimore, Maryland to two life sentences and a consecutive ten-year sentence in prison for the murder-for-hire of Robert Long. At the time of his death, Long was a cooperating witness in several cases pending in 2007 and 2008 in the Circuit Court for Baltimore City. The sentence was announced by the Acting United States Attorney for the District of Maryland Stephen M. Schenning; Assistant Special Agent in Charge Don A. Hibbert of the Drug Enforcement Administration, Baltimore District Office; Colonel Woodrow Jones, Chief of the

Maryland Transportation Authority Police; and Colonel William M. Pallozzi, Superintendent of the Maryland State Police.

According to evidence presented at the two-week trial, Lucas was a member of "Dead Man Inc." (DMI), a criminal street and prison gang. Lucas symbolized his allegiance to DMI while in prison in 2007 by having a large tattoo of a hangman's noose around his neck and on his chest.

Jose Morales solicited Lucas and his now-deceased brother to kill Morales's employee, Robert Long, to retaliate for Long's cooperation with the police and to prevent Long from testifying against Morales. Morales paid Lucas in cash and cocaine to kill Long. The federal case focused on the use of cellular telephones with the intent to have Long murdered and the evidence showed that Lucas and Morales used cell phones to contact one another regarding Long's cooperation and Long's whereabouts. Minutes after the murder, Lucas called Morales to advise that the "job" was done.

Long was shot twice in the head on March 24, 2008, in an open area behind Traci Atkins Park in southwest Baltimore known as the "Lumber Yard." The evidence presented at trial showed that Long was shot with a .25 caliber handgun at close range and that Lucas used, carried, and discharged the gun that caused Long's death.

Jose Joaquin Morales, age 42, of Baltimore, Maryland, was convicted at trial by a federal jury for using a cell phone to arrange the murder-for-hire of Robert Long and was sentenced to life in prison on December 9, 2013. The prosecution of Morales resulted in the exoneration of Demetrius Smith, who was serving life in state prison for the murder -- a crime he did not commit.

As grounds for Petitioner Lucas's § 2255 motion, Lucas raises claims that he received ineffective assistance of counsel. This case goes beyond this one claim, it entails actual innocence and mistaken identity. Discovery, which is as central as police reports containing statements of trial witnesses is mandated only after the jury is sworn.

Petitioner Lucas is presumed innocent. The Government should not say that the defendant since he must be guilty must know what he is accused of doing. I have no idea what he is accused of doing, and he doesn't know what kinds of proof the Government intends to offer. Petitioner Lucas thinks under the circumstances the courts and his attorneys should be given more. Sarokin & Zuckerman, supra note 1, at 1092-93, 1095 (citing district court proceedings).

Petitioner Troy Lucas was provided ineffective assistance of counsel under Constitutional standards when Attorney Harry Trainer and Attorney Chris David did not call as a witness, Louis Vanever, who could have testified that he worked for cooperating witness Jose Morales. Vanever would have further testified that Morales' provided Vanever with a cell phone, which Vanever used to stay in contact with Morales to manage Morales's business. At Petitioner's trial, the Government introduced cell records to prove that there was contact between both Morales' phone and Vanever's phone, especially around the time of the murder of Robert Long. A defense counsel possesses "wide discretion in matters of trial strategy." People v Odom, 276 Mich App 407, 415; 740 NW2d 557 (2007).

Decisions regarding what witnesses to present are generally considered strategic, supporting relief only when the defendant is denied a substantial defense based on a witness's absence. People v Payne, 285 Mich App 181, 190; 774 NW2d 714 (2009). The Court may not "substitute their judgment for that of counsel on matters of trial strategy, nor will it use the benefit of hindsight when assessing counsel's competence." Id. (quotation marks and citation omitted). However, "even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside of the wide range of professionally

competent assistance." Martin v Rose, 744 F2d 1245, 1249 (CA 6, 1984) (quotation marks and citation omitted).

The Government Attorney wrongly attributed the ownership of Vanever's phone to Petitioner. Had Attorneys Trainer and Davis called Vanever to testify at the trial, Vanever would have verified that the cell phone used by him, which is the cell phone in question, was given to him by Morales for business purposes. Vanever's testimony also would have established the Government theory that the relevant phone calls were placed by Vanever and not by the Petitioner, proving the Government's theory to be 100% wrong. The district court refused to give instructions, concluding that the consistent statements were admissible as substantive evidence under Rule 804(d)(1)(B) of the Federal Rules of Evidence.

Rule 804(b)(1) provides a hearsay exception for former testimony. Specifically, it creates an exception for "[t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." N.C. Evid. R. 804(b)(1). When the evidence is offered by the State, case law adds the additional requirement that the defendant must have been present at the former proceeding and represented by counsel. See, e.g., State v. Rollins, ___N.C. App. __, 738 S.E.2d 440, 445 (2013).In most cases, this exception raises no complicated issues. By way of example, courts have held the following types of prior testimony admissible under this rule:

- A witness's testimony during a prior trial on the charges at issue. See, e.g., State v. Hunt, 339 N.C. 622, 646 (1994); State v. Swindler, 129 N.C. App. 1, 5 (1998).

- A witness's testimony at the defendant's pretrial bond hearing in connection with the charge at issue. State v. Ramirez, 156 N.C. App. 249, 258 (2003) (rejecting the defendant's argument that the bond hearing raised different issues than the trial, and therefore defendant did not have "an opportunity and similar motive" to cross-examine the witness).

- A victim's testimony during voir dire conducted during the trial at issue. State v. Finney, 358 N.C. 79, 89 (2004) (trial court erred by prohibiting the defendant from admitting this testimony).

Petitioner Lucas has a right, under the Sixth Amendment, to the "effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (stating that "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel"); see also U.S. CONST. amend. VI.

Investigation of the prosecution's case and possible defenses has long been recognized as a core function of defense counsel in a criminal case, one that is necessary to the testing of the facts in our adversarial system.  This function has been constitutionalized as the Sixth Amendment duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."' ' Yet does the representation of Troy Allen Lucas did not ensure adversarial testing of the facts to protect against the conviction of the innocent even while convicting the guilty?

Petitioner moved to suppress the statements he made while in custody, arguing that he was subjected to a custodial interview without having been read his Miranda rights and that his confession was involuntary. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).The United States Supreme Court ruled in *Smith v. Illinois*, 469 U.S. 91 (1984), that when a defendant makes an unequivocal (clear) request for counsel, questioning must stop, and a defendant's responses to additional interrogation conducted after the defendant made a clear request may not be used to cast doubt on the initial request for counsel. The Court ruled in Smith that when a defendant said, "Uh, yeah. I'd like to do that," after being told of the right to counsel, that statement was a clear request for counsel—particularly because the defendant had mentioned earlier to the officers that a woman had told him to get a lawyer because they would railroad him.

Is the quantum of investigation the discovery rules allow defensible under the constitutional principle that adversarial testing cannot take place without defense counsel's

independent investigation of the facts?  Petitioner Lucas learned of the plea offer after the trial has concluded. Had counsel informed Mr. Lucas of the plea offer in a timely fashion, Petitioner may have accepted the offer, or at least would have engaged in further plea negotiations, instead attorneys for Petitioner Lucas failed to communicate a plea offer.  Furthermore, courts have been unanimous in finding that defense counsel's failure to inform a client of a plea offer constitutes a violation of the person's Sixth Amendment constitutional right to effective assistance of counsel.

Criminal defendants are expected to rely on their lawyer's advice in deciding to plead guilty. And the U.S. Supreme Court has recognized as much. In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Court reaffirmed its longstanding position on the issue and held that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."

For over 70 years, the Court has said lawyers are required to give clients their "informed opinion as to what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708 (1948). The Court further said that an "intelligent assessment" of the advantages to pleading guilty is "impossible" without counsel's advice. *Brady v. United States*, 397 U.S. 742 (1970).

Due process requires that a guilty plea must be intelligent and voluntary.  By pleading guilty, a defendant is waiving important constitutional rights. Such a waiver must be made freely and with a full understanding of the significance and consequences of the action. The requirement that a plea be a "voluntary expression of [the defendant's] own choice" requires that it not have resulted from, for example, actual or threatened physical harm or overbearing mental coercion.106. See id. at 243-44 ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."); Brady v. United States, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

For a plea to be made intelligently, the defendant must understand the nature of the charges, their "critical element[s]" and the consequences of the plea. See Henderson v. Morgan, 426 U.S. 637, 647 n.18 (1976) (assuming that every element of the charge need not be described

but concluding that "intent is such a critical element of the offense of second-degree murder that notice of that element is required" for a plea to be voluntary); see also State v. Barts, 321 N.C. 170, 174-76 (1987) (defendant knowingly and voluntarily entered plea of guilty as to both felony-murder and premeditation and deliberation theories of first-degree murder; trial judge adequately explained the two theories and defendant's responses indicated that he understood the nature of the plea and its possible consequences).

The requirement that the defendant understand the consequences of the plea has been interpreted to mean that a defendant must be informed of direct consequences of plea but not of collateral consequences. See Brady, 397 U.S. at 755; Bozeman, 115 N.C. App. at 661 (quoting Brady). Direct consequences have been broadly defined "as those which have a 'definite, immediate and largely automatic effect on the range of the defendant's punishment. 'See Bozeman, 115 N.C. App. at 661 ("Although a defendant need not be informed of all possible indirect and collateral consequences, the plea nonetheless must be 'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court . . .'" (quoting Brady, 397 U.S. at 755 (emphasis added)).

The Sixth Amendment guarantees a right to counsel for all defendants who face incarceration. See Iowa v. Tovar, 541 U.S. 77, 80 (2004). The right to counsel attaches at or after the initiation of adversary proceedings, whether by formal charge, preliminary hearing, indictment, information, or arraignment. See Kirby v. Illinois, 406 U.S. 682, 688 (1972). Once the Sixth Amendment right to counsel attaches, it extends to "critical stages of the proceedings." See Tovar, 541 U.S. at 80-81. Because plea bargaining and plea proceedings are critical stages, a defendant has a right to counsel at these stages.

The right to effective assistance of counsel rings hollow when restrictive discovery rules render an attorney unable to investigate the facts of the case. There are clear connections among the effective assistance of counsel, the duty to investigate, and discovery. Sarokin & Zuckerman, supra note .1 Judge Sarokin and William Zuckerman recognize that "[t]he failure to provide full disclosure of the government's case early in the proceedings limits a defendant's ability to investigate the background and character of government witnesses and the veracity of their testimony." Id. at 1090.

Noting that discovery restrictions "impinge upon the right of defendants to a fair trial," id., the authors claim that liberalization of discovery is a "task for the legislature," and give only brief attention to the potential constitutional bases for an expanded right to discovery. Id. at 1108. They simply state that "[the call for a constitutional right of discovery is compatible with the holding in Brady," and note that "the fact that many prosecutors choose to open their files to opposing counsel raises the additional issue of equal protection." Id. at 1107.

The discovery framework is timely for two reasons. First, the Supreme Court has given much more vigor to defense counsel's Sixth Amendment-based duty to investigate in two recent decisions which reversed death sentences: Coming three years after the decision in Williams v. Taylor, the Wiggins Court also granted the defendant's claim of ineffective assistance based on investigatory failures. Id. at 2536-37; see also Supreme Court 2002 Term, Leading Cases, 117 HARV. L. REV. 278, 278 (2003) [hereinafter Leading Cases] (noting that "[a]fter nearly twenty years," the standard governing claims of ineffective assistance of counsel that was announced in "Strickland v. Washington has finally been given teeth"). Williams v. Taylor, in which, for the first time, the Supreme Court found ineffective assistance of counsel based on defense counsel's inadequate investigation. Wiggins, 123 S. Ct. at 2535.

Both Williams and Wiggins address failures to investigate mitigation evidence at a capital sentence hearing. The constitutional principles articulated in the cases, however, apply equally to investigation at the guilt/ innocence phase in non-capital cases. The trial attorneys in Wiggins had the tools at their disposal to do the necessary investigation; records in their possession suggested a very troubled childhood. They simply failed to investigate this avenue.

The assumption is that the defendant has enough information about the case to allow for an investigation to fly in the face of the constitutional right to a presumption of innocence. See Apprendi v. New Jersey, 530 U.S. 466, 477-78 (2000) (explaining that "[t]aken together.... [Fourteenth and Fifth Amendment] rights indisputably entitle a criminal defendant to a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt" (internal quotation omit[1]ted)); see also 1963 Brennan, supra note 5 at 287 (questioning "does not the denial of all discovery set aside the presumption of innocence-is not such denial blind to the superlatively important public interest in the acquittal of the innocent?").

The Supreme Court's doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers. See Dimaya, 584 U. S., at ___–___(plurality opinion) (slip op., at 4–5); id., at ___–___(GORSUCH, J., concurring in part and concurring in judgment) (slip op., at 2–9). Vague laws contravene the "first essential of due process of law" that statutes must give people "of common intelligence" fair notice of what the law demands of them. Connally v. General Constr. Co., 269 U. S. 385, 391 (1926); see Collins v. Kentucky, 234 U. S. 634, 638 (1914). Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to "make an act a crime." United States v. Hudson, 7 Cranch 32, 34 (1812).

Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide by. See Kolender v. Lawson, 461 U. S. 352, 357–358, and n. 7 (1983); United States v. L. Cohen Grocery Co., 255 U. S. 81, 89–91 (1921); United States v. Reese, 92 U. S. 214, 221 (1876). While the problem of acquiring adequate information for investigation in the case of an innocent defendant presents a compelling example that resonates with our notions of fundamental fairness in the adversary system, the problem exists well outside of the innocence context. On June 24, 2019, the Supreme Court held in Davis that the residual clause of 18 U.S.C. § 924(c) -- under which Peña has three convictions -- was unconstitutionally vague. See 139 S. Ct. at 2336." *United States v. Peña*, 09 CR 341(VM), at *4-5 (S.D.N.Y. Dec. 17, 2020).

Peña was convicted for violations of Section 924(j), not Section 924(c). However, a person is guilty under Section 924(j) if he causes the death of a person through the use of a firearm while "in the course of a violation of subsection (c)." 18 U.S.C. § 924(j).

In turn, 924(c) criminalizes the use of a firearm in furtherance of "a crime of violence or drug trafficking crime." Id. § 924(c)(1)(A). And a "crime of violence" is defined as a felony that "has as an element the use, attempted use, or threatened use of physical force" (the force clause), or which, "by its nature, involves a substantial risk that physical force against the person or property of another may be used" (the residual clause). See id. § 924(c)(3)(A)-(B). Here, because

Peña's convictions for violations of Section 924(j) were predicated on the conspiracy to commit murder-for-hire, they were predicated on the residual clause in Section 924(c)(3)(B).

*United States v. Peña*, 09 CR 341(VM), at *5 n.1 (S.D.N.Y. Dec. 17, 2020)

The Government conceded that Peña's convictions on Counts Seven and Eight cannot stand. Both counts were predicated on the conspiracy charged in Count Four, which qualifies as a predicate "crime of violence" under the residual clause of 18 U.S.C. § 924 that was held unconstitutionally vague in Davis. (See Dkt. No. 437 at 1-2.)

On appeal, both defendants argued that §924(c)'s residual clause is unconstitutionally vague. At first, the Fifth Circuit rejected the argument. United States v. Davis, 677 Fed. Appx. 933, 936 (2017) (per curiam). But after the Supreme Court vacated its judgment and remanded for further consideration in light of their decision in Sessions v. Dimaya, 584 U. S. ___ (2018), striking down a different, almost identically worded statute, the court reversed course and held §924(c)(3)(B) unconstitutional. 903 F. 3d 483, 486 (2018) (per curiam).

It then held that Mr. Davis's and Mr. Glover's convictions on one of the two §924(c) counts, the one that charged robbery as a predicate crime of violence, could be sustained under the element's clause. But it held that the other count, which charged conspiracy as a predicate crime of violence, depended on the residual clause; and so, it vacated the men's convictions and sentences on that count.

Assuming that defense counsel can garner all necessary information from their client ignores the fact that many defendants suffer from mental illness or retardation, drug or alcohol abuse, impaired memory, and other impediments which might prevent them from being adequate, the sole source for investigative leads. See, e.g., Atkins v. Virginia, 536 U.S. 304, 320 (2002) (acknowledging that "[m]entally retarded defendants may be less able to give meaningful assistance to their counsel"); United States v. Renfroe, 825 F.2d 763, 767 (3d Cir. 1987) (describing doctor's testimony, concerning a defendant who abused cocaine for sixteen years before as well as during his trial, "that cocaine addiction would affect a defendant's capacity to

confer effectively with counsel"); Melinda G. Schmidt et al., Effectiveness of Participation as a Defendant: The Attorney-Juvenile Client Relationship, 21 BEHAV. Sci. & L. 175 (2003).

See, e.g., Rompilla v. Beard, 545 U.S. 374, 377 (2005) (holding that under reasonableness prong of Strickland test, defense counsel must not rely on defendant and defendant's family's claims that no mitigating evidence exists, and must conduct review of evidence that prosecutor is likely to use "as evidence of aggravation at the trial's sentencing phase"); Wiggins v. Smith, 539 U.S. 510, 522–27 (2003) (finding ineffective assistance of counsel when counsel chose not to present mitigating evidence because that decision was unreasonable and could not have been strategic in light of counsel's deficient investigation into available mitigating evidence); Williams v. Taylor, 529 U.S. 362, 395–96 (2000) (concluding that defense counsel's failure to present evidence that defendant was "'borderline mentally retarded,'" and that defendant assisted law enforcement while in prison, and failure to use witnesses which would cast defendant in favorable terms, amounted to unreasonable conduct and ultimately did not meet Strickland standard of effective representation) (citation omitted).

Petitioner Lucas's trial attorney's failure to investigate Petitioner's mental state and to present evidence, at trial required an evidentiary hearing to resolve the petitioner's ineffective assistance claim. United States v, Burrows, 872 F. 2d 915 (9th Cir.1989) Hepatic encephalopathy," is the medical term for the disruption in the brain function, caused by liver disease. It can manifest as a sleep disorder, trouble concentrating, thinking, shaking, or slurred speech. Petitioner Lucas was diagnosed with the said disorder.

The role that discovery can play in advancing the goals of thorough investigation has not received the attention it deserves: as a mechanism to advance full airing of well-developed facts in an adversarial proceeding or within a plea bargain process where each side investigates enough so that there is some adversarial testing. Petitioner Lucas's attorneys failed to show any of the evidence in the Government's evidence file before the trial even after Petitioner Lucas requested to see all of the evidence. Attorney Trainer and Davis admitted that they had not had the time to read all of it themselves and that they would just try to try the Demetrius Smith case. Given Williams and Wiggins, and lessons about the need for adequate investigation to protect against a wrongful conviction, it is important to consider how restrictive discovery can violate

the right to the effective assistance of counsel. Courts and legislatures-should build on the momentum of Wiggins to recognize that investigation is one of the core functions of defense counsel.

It is a defining feature that gives meaning to the effective assistance of counsel. It is time to take the next logical step toward understanding how defense counsel's investigative ability is inextricably intertwined with the constraints that the discovery process places on defense counsel's access to information. It also assumes that the defendant (even one who is guilty) possesses specific information, such as names and addresses of potential witnesses, which is necessary for defense counsel to adequately investigate the case. It ignores the fact that incarcerated defendants cannot bring their attorneys to relevant people or places when they lack this information, and instead, perhaps only know someone by a nickname or by sight.

Certainly, Petitioner Lucas's attorneys faced with these obstacles must also investigate the case to fulfill the promise of effective assistance under the Sixth Amendment, be that in a trial or inappropriately counseling a client in the context of a plea bargain. The right to effective assistance is not contingent upon innocence. See Kimmelman v. Morrison, 477 U.S. 365, 380 (1986) (noting that "[t]he constitutional rights of criminal defendants are granted to the innocent and the guilty alike").

The Supreme Court has emphasized the importance of fact development in criminal cases, noting that: The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. Such fact development cannot take place without investigation. In turn, adversarial balance cannot take place without investigation by both the prosecution and the defense. Thus, the defense counsel's duty to investigate rests on the recognition of pretrial investigation as "perhaps, the most critical stage of a lawyer's preparation.

United States v. Cronic, 466 U.S. 648, 656 (1984); see also Strickland v. Washington, 466 U.S. 668, 685 (1984) ("The right to counsel plays a crucial role in the adversarial system

embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled" (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275-76 (1942))). See Cronic, 466 U.S. at 655-56; see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result"); Herring v. New York, 422 U.S. 853, 862 (1975) (remarking that "[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free"). United States v. Nixon, 418 U.S. 683, 709 (1974); see also Taylor v. Illinois, 484 U.S. 400, 408-09 (1988). 33. House v. Balkcom, 725 F.2d 608, 618 (11th Cir. 1984) (internal quotations omitted); see also Moore v. United States, 432 F.2d 730, 735 (3rd Cir. 1970) which noted that: Adequate trial preparation often may be a more an important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom.

The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge. Attorney Trainer and attorney Davis did not call crucial law enforcement officers to testify at trial. The Baltimore Police officers were the first responders, to the radio run, of the shooting of Robert Long. These officers spoke to witnesses, collected evidence at the crime scene, and arrested Demetrius Smith, a dark-skinned black male, for the murder of Robert Long.

In a State Trial, Smith was convicted for the murder of Long, served approximately four years of a life sentence, before his conviction was overturned, based on new evidence that suggested his innocence. The impetus for Smith's release was the statement of Jose Morales, who told federal authorities that he hired Petitioner and Brother Lucas to murder Robert Long. When attorneys Trainer and Davis failed to call these crucial witnesses to testify at the Petitioner Lucas's trial their representation fell below the acceptable standards of competent counsel. Several courts have undertaken a more forceful analysis of failure-to-investigate claims. For example, the Eight Circuit found ineffective assistance when counsel investigated and presented an alibi defense (albeit a weak one) at trial but failed to investigate the possibility that someone

else committed the crime.  Henderson v. Sargent, 926 F.2d 706, 711-12 (8th Cir. 1991) (reversing conviction where counsel failed to investigate evidence that victim's husband, or possibly another man with ties to the victim, had killed her because "[t]he decision to interview a potential witness is not a decision related to trial strategy.

Rather, it is a decision related to adequate preparation for trial" (internal quotations omitted)). The court gave the duty to investigate real meaning: "Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories. Counsel has a duty ... to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence."'

## VI. CONCLUSION

For the forgoing reasons, petitioner Lucas submits that his conviction must be VACATED.

Respectfully Submitted,

*5/14/2022*

Troy Allen Lucas
Reg. No. 62142-037
Allenwood USP
P.O. Box 3000
White Deer, PA 17887

*Resubmitted 6/7/2022 After Learning it was not on the Docket Sheet.*

31